# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JAMES M. M.,[1]            )
   o.b.o. KATHRYN E. M.        )
                                      )
          **Plaintiff,**         )
                                      )      **CIVIL ACTION**
**v.**                                  )
                                      )      **No. 20-4005-JWL**
**ANDREW M. SAUL,**           )
**Commissioner of Social Security,**     )
                                      )
          **Defendant.**        )
_____ )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to Title II and Title XVI, sections 216(i), 223, 1602, and 1614, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act) to his adult daughter for whom he has been appointed guardian. Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

## I.    Background

The claimant protectively filed applications for DIB and SSI benefits on April 17, 2017.  (R. 10).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff[2] claims that at his daughter's disability hearing the ALJ erred in considering both his testimony and the fact the State of Kansas appointed him guardian of his adult daughter; both erred and applied the incorrect legal standard when evaluating the Mental Disorder listings; and that substantial evidence does not support the finding Claimant is able to perform her past relevant work.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as

_____

[2] Plaintiff filed this case on behalf of his adult daughter, of whom he testified he has been appointed legal guardian, and who he alleges is disabled within the meaning of the Act. Throughout this decision, the court will refer to the plaintiff as Plaintiff, and to his daughter as the claimant, Claimant, or Plaintiff's daughter.

adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses the claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, the claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the errors alleged in the order they would be reached in applying the sequential evaluation process.

## II.     Evaluation of the Lay Testimony of Claimant's Father/Guardian

Plaintiff, the claimant's father and legal guardian, claims that although he appeared and testified at his daughter's disability hearing, the ALJ did "not discuss his testimony in any way" (Pl. Br. 11) and thereby failed to follow the regulatory and subregulatory requirements that he "carefully consider" or "consider" the record evidence and "look fully into the issues, [and] question the claimant and other witnesses."  Id. at 11, 12 (quoting 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3); Soc. Sec. Ruling (SSR) 96-8p; and Hearings, Appeals and Litigation Law Manual (HALLEX) I-2-6-56 available online at: https://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-56.html (last visited Nov. 10, 2020)).  He argues, "While this Circuit does not require an ALJ to make specific, written findings regarding a lay witness's opinion, this exception only applies when the written decision reflects that the ALJ considered the opinion."  (Pl. Br. 12) (citing Blea, 466 F.3d at 914-15).

Plaintiff recognizes that Claimant having a guardian is not dispositive of disability in the Social Security regulations, but argues, "it is clearly relevant and the ALJ's failure to mention it in the decision highlights the ALJ's indifference to relevant evidence supporting this disability claim."  Id. at 13.  Later in his brief, Plaintiff argues, "the ALJ apparently never noticed that defendant considered [the claimant] to be disabled when she was a child and that as an adult she has a legally appointed guardian" and is "a 'disabled person' under Kansas law."  Id. at 18.  He argues the regulations require the SSA to consider disability findings by other governmental agencies and that "it is questionable whether plaintiff can even independently enter into an agreement for competitive employment."  Id. (citing 20 C.F.R. § 404.1504).  He argues there is no

5

record evidence the agency "ever considered [the claimant's] guardianship and her status as a 'disabled person' under Kansas law notwithstanding the obvious relevance of this fact to her disability claim." Id. at 19.  He argues the ALJ never asked him a question when he testified at the hearing despite the HALLEX's instruction that an ALJ will "question the claimant and other witnesses" at a disability hearing. Id. (quoting HALLEX I-2-6-56).  He argues the agency's "lower level decision-makers apparently never knew about [the claimant's] guardianship and the ALJ either did not notice or did not care." (Pl. Br. 19).

The Commissioner argues that the decision reveals the ALJ considered Plaintiff's testimony and that is all that is required. (Comm'r Br. 13-14) (citing Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996); and Buckner v. Colvin, CIV.A. 12-4074-JWL, 2014 WL 29109, at *5 (D. Kan. Jan. 3, 2014) (discussing Blea, 466 F.3d 903)).  He argues that, in any case, if the ALJ erred in failing to further discuss Plaintiff's testimony, the error was harmless because his testimony was cumulative of the claimant's grandmother's testimony which the ALJ evaluated as a medical opinion and found unpersuasive.  Id. at 14-15 (citing R. 20, 375, 378, 522).  He points out that Plaintiff cites no legal authority for the proposition that there is a heightened duty to address Plaintiff's testimony because he is Claimant's guardian, and the regulations recognize "a finding of disability under state law 'is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled.'"  Id. at 15 (quoting 20 C.F.R. § 404.1520b(c)(1)-(3) (2017)).  In response to Plaintiff's argument that the evidence Claimant is a disabled person under Kansas law should have been considered, the Commissioner argued "under the law in effect when

6

[Claimant] filed her application in this case, the ALJ was <u>not required to consider</u> these findings of disability from other agencies."  Id. at 11 (emphasis added) (citing 82 Fed Reg. 5,844; 20 C.F.R. § 404.1520c (2017)).

In his Reply Brief, Plaintiff discusses his testimony and the guardianship issue in two sections.  (Reply 8-11).  He argues his testimony as Claimant's father, caretaker, and legal guardian is the "best evidence" and should not be dismissed as cumulative of the medical opinion of Claimant's grandmother.  <u>Id.</u> at 8.  He distinguishes <u>Adams</u>, 93 F.3d at 715, arguing that case deals with a finding of witness credibility and does not hold that an "ALJ does not have to consider a witness' [sic] testimony."  <u>Id.</u>  He argues, "In <u>Blea</u>, the court remanded the case because it wasn't clear that the ALJ had <u>considered</u> the witness' [sic] testimony in making his decision.  The same is true here."  <u>Id.</u> at 8-9.  He argues that the court has no "way to determine if the testimonial evidence would have made a difference since there is no 'articulation of how that evidence was considered.'" <u>Id.</u> at 9 (quoting loosely, and without citation R. 20, and adding in footnote 2, "Or if it even really was considered.").  He acknowledges 20 C.F.R. § 404.1520c(d) states that an ALJ need not articulate how he considered evidence from a non-medical source, but argues:

> It does not say, as defendant and the ALJ suggest, that defendant doesn't have to explain how it evaluated the nonmedical evidence.  In fact, this assertion is fundamentally at odds with due process and the notion of a fair hearing.  It cannot be the law that defendant can take obviously crucial testimony given under oath from the guardian of a disabled person seeking disability and then completely ignore that testimony without any explanation.

Id.  Plaintiff goes on to argue, "Defendant admits that the ALJ did not consider [the

claimant]'s guardianship" and the Commissioner also argues that the new regulations do

not require him to consider such evidence.  Id. 9-10.

> He argues that the Commissioner's
>
> argument advances an interpretation of the new regulation that it does not
> warrant.  Without digressing into a discussion of the finer points of
> interpreting federal regulations it is clear that the regulation in question,
> could have included, but did not include any references to "guardianships"
> and it limits its scope to findings of other "governmental <u>agencies</u>" not to
> State Courts.  [Claimant]'s ability to act independently on her own is
> clearly limited by the power the Kansas Court has taken from her and
> vested in her guardian.  This court can take <u>judicial notice</u> that a Kansas
> State Court has confirmed that [claimant] is impaired to the extent that she
> cannot be depended on to act in her own best interest.  Defendant does not
> advance any legitimate reason why this is not relevant, material and
> substantial evidence in this disability case.

(Reply 10) (emphases in original).

## A.    <u>Legal Standard</u>

As Plaintiff suggests, in the Tenth Circuit, an ALJ is not required to make specific,

written, findings regarding each third-party or lay opinion when the decision reflects that

the ALJ considered that opinion.  <u>Blea v. Barnhart</u>, 466 F.3d 903, 914-15 (10th Cir.

2006); <u>Adams v. Chater</u>, 93 F.3d 712, 715 (10th Cir. 1996).  In <u>Adams</u>, the court

"decline[d] claimant's invitation to adopt a rule requiring an ALJ to make specific written

findings of each witness's credibility, particularly where the written decision reflects that

the ALJ considered the testimony."  93 F.3d at 715.  The <u>Adams</u> court determined "that

the ALJ considered the testimony of claimant's wife in making his decision because he

<u>specifically referred to it in his written opinion</u>," and the court found no error in the

ALJ's failure to make specific, written <u>findings</u> regarding the testimony.  <u>Id.</u> (emphasis added).  Ten years later, the Tenth Circuit confirmed the rule that an ALJ is not required to make specific written findings regarding a third-party lay opinion if the written decision reflects that the ALJ considered it.  <u>Blea</u>, 466 F.3d at 915.  The <u>Blea</u> court noted, however, that "[h]ere, the ALJ made no mention of Mrs. Blea's testimony, nor did he refer to the substance of her testimony anywhere in the written decision.  Thus, it is not at all 'clear that the ALJ considered [Mrs. Blea's] testimony in making his decision.'" <u>Id.</u> (quoting <u>Adams</u>, 93 F.3d at 715).

As the Commissioner suggests, new regulations became effective March 27, 2017, in which the Commissioner found that certain evidence; including decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner; "is inherently neither valuable nor persuasive to the issue of whether you are disabled or blind under the Act, [and the SSA] will not provide any analysis about how we considered such evidence in our determination or decision."  20 C.F.R. § 404.1520b(c) (2017).  20 C.F.R. § 404.1504 specifically addresses decisions by governmental agencies and nongovernmental entities, and concludes that for

> claims filed (see § 404.614) on or after March 27, 2017, we will not
> provide any analysis in our determination or decision about a decision
> made by any other governmental agency or a nongovernmental entity about
> whether you are disabled, blind, employable, or entitled to any benefits.
> However, we will consider all of the supporting evidence underlying the
> other governmental agency or nongovernmental entity's decision that we
> receive as evidence in your claim in accordance with § 404.1513(a)(1)
> through (4) [(relating to objective medical evidence, medical opinions,
> other medical evidence, and evidence from nonmedical sources)].

20 C.F.R. § 404.1504 (2017).

In the new regulations, the Commissioner explicitly delineated five categories of evidence including objective medical evidence, medical opinion, other medical evidence, evidence from nonmedical sources, and prior administrative medical findings.  20 C.F.R. § 404.1513 (2017).  The regulations define objective medical evidence as "medical signs, laboratory findings, or both."  20 C.F.R. § 404.1513(a)(1) (2017).  "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."  20 C.F.R. § 404.1513(a)(3) (2017).  "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim."  20 C.F.R. § 404.1513(a)(4) (2017).  Finally, the regulations explain that the SSA is not required to articulate how it considered evidence from nonmedical sources.  20 C.F.R. § 404.1520c(d) (2017) ("We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section." (relating to evaluation of medical opinions and prior administrative medical findings)).

### B.    The ALJ's Findings

The ALJ made certain findings relevant to the issue here.  The ALJ stated he

> considered all of the relevant medical and non-medical evidence in the case record, including evidence from medical sources; evidence from the claimant and people that know the claimant; and evidence from school, vocational training, work, and work-related programs.

10

(R. 14).

The ALJ also addressed evidence from other government and nongovernmental

entities and evidence from nonmedical sources:

> Finally, the undersigned Administrative Law Judge has taken note that the
> record includes decisions by other government and nongovernmental
> entitles, as well as statements on issues reserved to the Commissioner of
> Social Security; however, such decisions and statements are not binding on
> the Social Security Administration and are not the Commissioner's decision
> as to whether the claimant is disabled under the Social Security Act.  Such
> evidence is neither inherently valuable nor persuasive.  Therefore, no
> written analysis of these decisions and statements shall be provided.
> Nevertheless, the undersigned has fully considered the supporting evidence
> underlying these decisions and statements when reaching the findings
> herein.  (Exhibit 3F; 20 CFR 404.1504, 404.1520b(c), 416.904,
> 416.920b(c)).  The undersigned has also taken note that the record includes
> evidence from nonmedical sources, but such evidence similarly does not
> necessitate any articulation of how that evidence is considered.  (Exhibits
> 3E, 11E, 12E, 13E; Witness's Testimony; 20 CFR 1520c(d), 416.920c(d)).
>
> ***
>
> The cumulative medical and non-medical evidence does not reasonably
> support a finding that the claimant has any greater or additional limitations,
> such as a limitation to requiring frequent or constant supervision.

(R. 20-21).

## C.    Analysis

Plaintiff is correct that Adams does not stand for the proposition that an ALJ does

not have to consider a witness's testimony.  Rather, as explained above, both Adams and

Blea hold that a specific, written, finding regarding a lay witness's credibility is not

required when the decision reflects that the ALJ considered the testimony.  Blea, 466

F.3d at 915; Adams, 93 F.3d at 715.  Thus, Adams did not require remand, because it was

"clear that the ALJ considered the testimony of claimant's wife in making his decision

because he specifically referred to it in his written opinion;" 93 F.3d at 715, but <u>Blea</u>

required remand because "the ALJ made no mention of Mrs. Blea's testimony, nor did he

refer to the substance of her testimony anywhere in the written decision.  [So], it [wa]s

not at all 'clear that the ALJ considered [Mrs. Blea's] testimony in making his decision.'"

<u>Blea</u>, 466 F.3d at 915 (quoting <u>Adams</u> 93 F.3d at 715).

Here, as in <u>Adams</u>, the ALJ's decision reflects he considered Plaintiff's testimony.

The ALJ stated he had "considered all of the relevant … non-medical evidence in the

case record, including evidence from … people that know the claimant."  (R.14).  He

went on to note that he had taken "note that the record includes evidence from

nonmedical sources, but such evidence … does not necessitate any articulation of how

that evidence is considered," and cited Exhibit 11E—the 3rd Party Function Report

completed by Plaintiff—and "Witness's Testimony."  (R. 20).  Plaintiff was the only

witness who testified at the hearing as exemplified by the ALJ's citation to "Claimant's

Testimony" when referring to the claimant's testimony at the hearing (R. 14, 17) and his

specific identification of the vocational expert when discussing his hearing testimony.

(R. 21-11).  No other testimony was taken at the hearing.  The decision reveals the ALJ

considered Plaintiff's testimony, and as the Commissioner points out, more is not

required.

Plaintiff's argument the ALJ failed to question him at the hearing is of no moment.

Plaintiff testified at the hearing and was questioned by Claimant's representative at the

hearing.  That is sufficient to satisfy the HALLEX requirement the ALJ "look fully into

the issues, [and] question the claimant and other witnesses."   HALLEX I-2-6-56

available online at: https://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-56.html (last visited

Nov. 10, 2020).  The fact Plaintiff was questioned by Claimant's representative rather

than the ALJ at the hearing is irrelevant.  The Tenth Circuit long ago recognized "the

ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and

present [the] claimant's case in a way that the claimant's claims are adequately

explored."  Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir.1997).  That Plaintiff's

representative at the hearing was not an attorney does not materially affect this analysis.

The guardianship issue is a closer question and requires additional discussion.

While Plaintiff is correct the ALJ did not mention Plaintiff is Claimant's guardian in the

decision at issue, as Plaintiff also points out, the record demonstrates he is Claimant's

guardian.  (R. 75, 89, 304, 361).  Moreover, as Plaintiff argues, he testified at the hearing,

that he is Claimant's guardian.  (R. 54).  The ALJ cited in his decision to each of the

documents containing the record evidence cited above.  (R. 19 (citing Exs. 1A, 2A), 20

(citing Exs. 5E, 11E, "Witness Testimony")).  The ALJ stated several times throughout

the decision that he considered all the record evidence.  (R. 11 ("After careful

consideration of all the evidence"), 12 ("After careful consideration of the entire record"),

16 ("After careful consideration of the entire record")).  The general practice in the Tenth

Circuit "is to take a lower tribunal at its word when it declares that it has considered a

matter."  Hackett, 395 F.3d at 1173 (citing United States v. Kelley, 359 F.3d 1302, 1304-

05 (10th Cir. 2004) (district court must consider certain factors before imposing prison

time for probation violation, but court need only say that it has done so); and, Andrews v.

<u>Deland</u>, 943 F.2d 1162, 1170 (10th Cir. 1991) (refusing to "look behind a district court's express statement that it engaged in a <u>de novo</u> review of the record")).

Further, the ALJ recognized "that the record includes decisions by other government and nongovernmental entities," and stated that although no written analysis of such evidence was required, he had "fully considered the supporting evidence underlying these decisions and statements when reaching the findings" in his decision. (R. 20).[3]  This statement is consistent with 20 C.F.R. § 404.1504, which requires that the SSA "will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim." The court notes that the Commissioner erred in his Brief when he argued that "the ALJ was not <u>required to consider</u> these findings of disability from other agencies." (Comm'r Br. 11) (emphasis added) <u>see also</u>, (Comm'r Br. 2).  While the Commissioner erred in his argument, the ALJ did not in his application.  He recognized that he was not required to <u>articulate</u> his consideration of such evidence, but that he was required to consider it, and he specifically noted that he did so.

Plaintiff argues that a court appointment of a guardian is different, but he doesn't explain what more is required and how that would have changed the decision at issue. He acknowledges that the fact Claimant is a ward is not dispositive of disability but argues it should have triggered further inquiry and the ALJ's failure to mention it

---

[3] As Plaintiff argues, appointment of a guardian is not the act of a government agency but of a state court.  (Reply 10).  The court finds it notable that in his decision the ALJ referred to "government ... entities" rather than government agencies (R. 20), thereby suggesting that he also recognized the distinction Plaintiff makes.

highlights his indifference to relevant evidence.  But, Congress gave the responsibility to the SSA, not to state courts, to determine disability under the Act, and the ALJ considered the record evidence underlying Claimant's condition and Plaintiff's position as her guardian and specifically found "[t]he cumulative medical and non-medical evidence does not reasonably support a finding that the claimant has any greater or additional limitations, such as a limitation to requiring frequent or constant supervision." (R. 20-21).

Plaintiff's real argument is that the ALJ should have accorded greater weight to his testimony.  If the ALJ had completely accepted Plaintiff's testimony he would almost certainly have found Claimant disabled.  But there was contrary evidence which the ALJ clearly credited.  Plaintiff does not demonstrate that his testimony compels a finding of disability or even of greater RFC limitations than assessed.  The ALJ found that Claimant's work at the retirement home in 2016 and 2017 was not accommodated (R. 14, 18), and the evidence supports that finding.  (R. 375) ("was this person given special consideration in the job … No – Katie was treated the same as everyone else.").  He found "the medical evidence does not objectively document any significant worsening in the claimant's conditions since she performed her prior employment," and the court's review finds this is supported by the record evidence.  (R.14, 18).  The ALJ found Claimant worked at substantial gainful activity levels in 2016 through the first quarter of 2017.  Id.  This period is the period at issue in this case because Claimant amended her onset date to March 22, 2017 (R. 10), but the record demonstrates that Claimant actually worked at substantial gainful activity levels from 2002, when she began working at the

hospital until she was fired from the retirement home in 2017.  That the ALJ never mentioned that Claimant received disability benefits as a child is immaterial here because the claimant had worked at substantial gainful activity levels for over 14 years since receiving childhood disability benefits.

Although Plaintiff argues his testimony as Claimant's father is the "best evidence" regarding her condition and should not be compared with the written opinion of Claimants grandmother who is a retired professor of medicine at the University of North Carolina School of Medicine, Plaintiff's testimony was in many ways very similar to Claimant's Grandmother's medical opinion.  Because it was a medical opinion, the ALJ articulated his evaluation of Claimant's grandmother's opinion and the court finds that explanation illustrative of the reasons Plaintiff's testimony does not compel a different result in this case.  Therefore, the court quotes that explanation here in relevant part.

> According to Dr. M.,[4] the claimant "suffers from a life-long, chronic and complex disability that has always, and will always prevent her from ... maintaining employment in a competitive work situation."  (Exhibit 18E/1). This statement is inconsistent with the claimant's prior engagement in substantial gainful activity as a housekeeper despite her impairments. Although Dr. M. reports that the claimant received significant accommodations in her prior employment as a housekeeper at a retirement home, the claimant herself reported that the only special condition she received is that she was hired through a work study program in 2002.  By her report, she continued to perform the work without accommodation until she reported to the human resources department that she has been coerced into "having inappropriate relations" with a co-worker, at which time she was terminated.  (Exhibit 1E/6-7; see also Exhibit 6F/3).  After a careful review of the record, the undersigned finds that the opinion of Dr. M. is

---

[4] Because Claimant's grandmother has the same last name as Claimant and Plaintiff, the court has chosen to identify her by the initial of her last name also.

unsupported by and inconsistent with the preponderance of evidence in this case; therefore, it is found to be unpersuasive.

(R. 20).

Because the testimony of Plaintiff (Claimant's father and legal guardian) does not compel a different finding than made by the ALJ in this case; because, as Plaintiff acknowledges, the appointment of a legal guardian is not dispositive of the issue of disability in a Social Security case; because the ALJ considered all of the record evidence relating to disability decisions by other governmental entities; and because Claimant, who has the burden of proof of disability, did not present any documentary evidence to the Commissioner regarding the Kansas court's consideration of her need for a guardian, the court finds that the ALJ here did not err in not discussing guardianship.

## III.    Mental Disorder Listings

Plaintiff claims that in evaluating Listing 12.05B (Intellectual disorder) the ALJ applied the incorrect legal standard when considering moderate limitations, marked limitations, or extreme limitations to determine whether Claimant's condition meets the Listing.  (Pl. Br. 16-17).  This is so because, in Plaintiff's view:

> the record is clear that plaintiff cannot function <u>independently</u> on a <u>sustained basis</u> without third-party intervention and significant external daily living supports and that her limitations—based on all the evidence— are more severe than those described in the definition of <u>moderate</u> severity.

<u>Id.</u> at 17 (emphases in original).  Plaintiff argues the ALJ did not adequately consider that Claimant "was fired from the only two jobs she ever had," did not accept facts as testified by Plaintiff, and did not adequately consider that she was a ward with a legal guardian. <u>Id.</u> at 18-19.

17

Plaintiff points out the ALJ did not discuss whether Claimant's condition meets or equals the criteria of Listing 12.11 (Neurodevelopmental disorders) but that she admittedly has Tourette's syndrome which is a neurodevelopmental disorder.  Id. at 20-21.  Plaintiff argues:

> It was error for defendant to never even consider whether [Claimant] met or equaled the Listing 12.11 despite its congruence with her life-long signs and symptoms.  Defendant's failure to consider whether [Claimant] met Listing 12.11 is another indication that defendant failed to apply the correct legal standards to this case.

(Pl. Br. 22).

The Commissioner argues that substantial record evidence supports the ALJ's determination Claimant does not have on extreme limitation or two marked limitations in the four broad mental functional areas (the paragraph B criteria) and therefore neither Listing 12.05B nor Listing 12.11 is met.  (Comm'r Br. 9-11).  The Commissioner acknowledges that the ALJ erred in failing to discuss Listing 12.11 but argues the error is harmless because the paragraph B criteria necessary to meet Listing 12.05B are also required of Listing 12.11 and, consequently, it is clear Listing 12.11 is not met.  Id. a 9.  In his Reply Brief, Plaintiff reiterates his argument the ALJ used the incorrect legal standard in considering the paragraph B criteria.  (Reply 8).  He argues that the problem is that the ALJ relied on the opinions of the state agency psychological consultants "without considering whether the consultant's [sic] assessments of 'mild' and 'moderate' limitations made sense in light of all the relevant evidence—much of which of which [sic] the consultants did not have."  Id. at 7 (emphases in original).

### A.   The Applicable Legal Standard

The criteria of Listing 12.05B are

B. Satisfied by 1, 2, and 3 (see 12.00H):

1. Significantly subaverage general intellectual functioning evidenced by a or b:

a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

a. Understand, remember, or apply information (see 12.00E1); or

b. Interact with others (see 12.00E2); or

c. Concentrate, persist, or maintain pace (see 12.00E3); or

d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R., Pt. 404, Subpt. P., App. 1 § 12.05B.

The criteria of Listing 12.11 are:

12.11 Neurodevelopmental disorders (see 12.00B9), satisfied by A and B:

A. Medical documentation of the requirements of paragraph 1, 2, or 3:

1. One or both of the following:

a. Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or

b. Hyperactive and impulsive behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being "driven by a motor").

2. Significant difficulties learning and using academic skills; or

3. Recurrent motor movement or vocalization.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

1. Understand, remember, or apply information (see 12.00E1).

2. Interact with others (see 12.00E2).

3. Concentrate, persist, or maintain pace (see 12.00E3).

4. Adapt or manage oneself (see 12.00E4).

20 C.F.R., Pt. 404, Subpt. P., App. 1 § 12.11.

The regulations define the five-point rating scale for the paragraph B criteria:

a. No limitation (or none). You are able to function in this area independently, appropriately, effectively, and on a sustained basis.

b. Mild limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.

c. Moderate limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.

d. Marked limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.

e. Extreme limitation. You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

20 C.F.R., Pt. 404, Subpt. P., App. 1 § 12.00F(2).

### B.      The ALJ's Step Three Findings

At step three of the sequential evaluation process, the ALJ found that Claimant "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P,

Appendix 1." (R. 13, finding no. 4) (bold omitted). He noted that Claimant's mental impairments do not meet the criteria of Listings 12.04, 12.06, or 12.08. Id. He explained the meaning of each degree of limitation in evaluating the "paragraph B" criteria of the Listings of mental disorders:

> A "mild limitation" means the claimant functions in this area independently, appropriately, effectively, and on a sustained basis. A "moderate limitation" means the claimant's functioning in this area independently, appropriately, effectively, and on a sustained basis is fair. A "marked limitation" means that the claimant's ability to function in a given area independently, appropriately, effectively, and on a sustained basis is seriously limited. An "extreme limitation" means that the claimant is unable to function in a given area independently, appropriately, effectively, and on a sustained basis.

Id. at 14. The ALJ found Claimant has a moderate limitation in each of these four broad mental functional areas (the "paragraph B" criteria). Id. at 15. He later explained:

> The claimant's intellectual disorder does not satisfy the criteria of Listing 12.05 because … the record does not document significant deficits in adaptive functioning manifested by an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating persisting, or maintaining pace; or adapting or managing oneself.

(R. 15).

## C.    **Analysis**

Plaintiff argues that in evaluating Listing 12.05B, although the ALJ found Claimant only moderately limited in each of the broad mental functional areas, based on all the evidence her actual limitations in those areas are greater because of the third-party interventions and daily living supports she receives and needs. However, this argument is based primarily on the testimony of her father as her legal guardian which, as explained

above, the ALJ considered and discounted, and the testimony does not compel a different result.  Further, as also noted above, the ALJ appropriately explained why he found the medical opinion of Claimant's grandmother unpersuasive.  As the Commissioner argues, the ALJ's findings regarding the paragraph B criteria are supported by the medical opinion of Dr. Mintz and the prior administrative medical findings of Dr. Altomari and Dr. Kaspar.  The fact Claimant "was fired from the only two jobs she ever had" (Pl. Br. 18) does not require a different result because while a disability may lead to being fired from work, being fired from work is not dispositive of disability.  People without disabilities are fired and are not, on that basis, awarded disability benefits.

Plaintiff's argument that the consultants did not have all the relevant evidence fails for two reasons.  First, to the extent he is arguing that they were not aware he was Claimant's legal guardian, he ignores that the initial Disability Determination Explanation, which was signed by Dr. Altomari explained contact which the single decision maker had had with "Jim," Claimant's legal guardian.  (R. 75, 89).  Second, and most importantly, the ALJ had considered all of the relevant evidence, and as Plaintiff argued in his Reply Brief, "it is the ALJ—not the consultants—who bears the ultimate responsibility for deciding whether [a claimant] meets/equals a Listing and for establishing [Claimant]'s RFC.  (Reply 8).  Although an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."  Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004).  "And the ALJ's RFC assessment is an administrative, rather than a medical determination."  McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir.

2012) (citing Social Security Ruling (SSR) 96-05p, 1996 WL 374183, at *5 (July 1996)).

Because RFC assessment is made based on "all of the evidence in the record, not only the

medical evidence, [it is] well within the province of the ALJ."  Dixon v. Apfel, No. 98-

5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. §§ 404.1545(a),

416.945(a).

Because Plaintiff's Listing 12.05B argument fails, his Listing 12.11 argument

necessarily fails also.  Although the ALJ clearly erred in failing to discuss Listing 12.11,

that error was harmless, as the Commissioner suggests, because in order to meet Listing

12.11 Claimant's condition had to meet the paragraph B severity criteria which, as

already discussed, substantial evidence supports the ALJ's finding that she did not.

## IV.    Past Work

Plaintiff argues that the ALJ erred in finding Claimant can perform her past

relevant work as a housekeeper as she actually performed it or as it is usually performed.

He argues this is so because Claimant was terminated from the only two jobs she ever

had despite accommodations, targeted case management, and "assistance/intervention

from her father/guardian" (Pl. Br. 22) which illustrates that she "could not sustain

employment at her past work as she actually did it—even with the special supports and

accommodations she received."  Id. a 23 (emphasis in original).  He argues, "the evidence

the ALJ cites to support his Step 4 finding is overwhelmed by [Claimant]'s track record

in the real world of competitive employment."  Id. at 24-25 (quoting Grogan v. Barnhart,

399 F. 3d 1257, 1261-62 (10th Cir 2005) ("Evidence is not substantial if it is

overwhelmed by other evidence or constitutes a mere conclusion."); and Hamlin v.

Barnhart, 365 F.3d 1208, 1214 (10th Cir 2004) (A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or there is a mere scintilla of evidence supporting")).

He argues,

The ALJ asserts that claimant must not be disabled because: (1) she was able to work at SGA in the past-and allegedly her condition has not "worsened;" (2) she experienced some brief anxiety in 2017 which was resolved with medication; (3) that she was non-compliant with her anti-depressant when she had her SSA consultative mental exam in June 2017; (4) that her intellectual impairment has remained <u>stable</u> and (5) "that the <u>preponderance of the evidence</u> supports a conclusion that claimant retains a residual functional capacity that would not preclude the performance of her prior work as a housekeeper at a hospital or a nursing home."

(Pl. Br. 25) (quoting R. 18) (emphasis in Plaintiff's Brief).  But he argues,

The overwhelming evidence in the record [actually] shows: (1) that [Claimant] could work at SGA only as long as she had outside help; (2) anxiety is not the root cause of [Claimant]'s disability; (3) anti-depressants will not fix [Claimant]'s intellectual and developmental disability; (4) [Claimant]'s intellectual impairment has always kept her from being able to function independently; and (5) the preponderance of evidence shows that she can only sustain competitive employment when her employment is supported with special outside assistance.

<u>Id.</u>  He argues the ALJ wrongly found Dr. Altomari's and Dr. Kaspar's prior administrative medical findings[5] persuasive because he did not explain what "non-medical evidence, longitudinal medical history and activities their [prior administrative

---

[5] Both the ALJ and Plaintiff refer to the prior administrative medical findings as "opinions."  <u>E.g.</u>, (Pl Br. 25); (R. 19).  However, as the Commissioner explains in his Brief, under the new regulations applying to claims filed after March 27, 2017, "the state agency's findings should have been called 'prior administrative medical findings' rather than opinions.  20 C.F.R. § 404.1513a.  However, the ALJ considers prior administrative medical findings under the same rules he considers opinions, 20 C.F.R. § 404.1513a(c)." (Comm'r Br. 10, n.4); <u>see also</u>, 20 C.F.R. § 404.1520c (2017).

medical findings] are consistent with." Id. at 26. He argues Dr. Mintz's opinion should not have been found persuasive because it was equivocal and Dr. Mintz never noticed that Claimant was a ward. He concludes, "there is no substantial evidence that [Claimant] is able to engage in competitive employment on a sustained basis as required by SSR 96-8p without employer accommodations and third-party help." (Pl. Br. 26).

The Commissioner argues the record evidence supports the ALJ's decision. (Comm'r Br. 16). He argues Claimant worked 13 years at a hospital earning well above substantial gainful activity level and then worked at least one year at a retirement community at above substantial gainful activity level. Id. He argues Plaintiff "identifies no medical evidence connecting the bases of her termination with either of her alleged disabling conditions: mild intellectual disability or Tourette's Syndrome." Id. at 16-17. He argues that Plaintiff's suggestion of what the preponderance of the evidence shows proffers the wrong standard of review. Id. at 17. He points to Dr. Altomari's and Dr. Kaspar's narratives and argues they "demonstrate what evidence the ALJ found consistent with their opinions." Id. He argues Dr. Mintz's opinion supports the ALJ's decision and that even if it "could be read as also supporting lesser abilities, … if the evidence can support both the ALJ's decision and a finding of disability, under the substantial evidence standard of review, this Court [sic] must affirm." Id. at 18 (citing Lax, 489 F.3d at 1084).

In his Reply Brief, Plaintiff points out, "This court can neither reweigh the evidence nor substitute its judgment for that of the agency." (Reply 2) (citing Hamlin, 365 F.3d at 1214). He sets forth the evidence which, in his view, supports the

Commissioner's decision (Reply 3) and the evidence which, in his view, overwhelms the evidence upon which the Commissioner's position relies.  Id. at 3-5.  He argues that the ALJ's decision did not adequately consider all of the evidence including Plaintiff's "life-time history as a person with special needs who has demonstrated that she cannot sustain competitive employment unless she has external support and employer accommodations."  Id. at 6.  He concludes that Dr. Altomari, Dr. Kaspars, and Dr. Mintz "did not have all the evidence to consider and that the evidence before the ALJ that they did not consider dictates a different conclusion."  Id.

The essence of Plaintiff's argument is that his testimony as Claimant's father and guardian was not available to the psychologists and demonstrates that Claimant "cannot sustain competitive employment unless she has external support and employer accommodations."  Id.  But, as the court already found above, that evidence was available to and considered by the ALJ.  Moreover, as Plaintiff acknowledges (Reply 8), it is the ALJ's ultimate responsibility to assess RFC.  Plaintiff's argument that the evidence before the ALJ dictates a different conclusion fails because the court has already decided that the ALJ appropriately considered and discounted Plaintiff's testimony, that substantial evidence ("such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") supports that decision, and that the testimony does not compel a different result.  The only way the court could find otherwise would be to accord greater weight to Plaintiff's testimony than did the ALJ.  As the Commissioner points out, Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is record evidence which might support a contrary finding will not

establish error in the ALJ's determination.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

Plaintiff has shown no error in the Commissioner's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated November 12, 2020, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**